UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-61577-Civ-SCOLA

JAMIE DANIELS,

    Plaintiff,

vs.

UNITED AUTOMOBILE, AEROSPACE,
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, AFL-CIO,
LOCAL 2278, et al.,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS MATTER is before the Court on the Motion to Dismiss [ECF No. 25], filed by the Broward Teachers Union ("BTU"). For the reasons explained below, this Motion is granted, but Plaintiff shall be given an opportunity to amend.

### Introduction[1]

Plaintiff was hired by BTU in or around September 2004. BTU and the United Automobile, Aerospace, and Agricultural Implement Workers of America, AFL-CIO, Local 2278 (the "Union") had a collective bargaining agreement between them, and Plaintiff was a dues paying member of the Union. In July of 2011, BTU laid off the Plaintiff, along with two other employees. Under the collective bargaining agreement, "[n]o new employees within the unit [would] be hired until all laid-off unit members who are qualified for any new opening or position have been recalled," following notice. *See* Collective Bargaining Agreement [ECF No. 11-1], art. XV, § 2(h). The collective bargaining agreement also provided that "[t]he order of recall shall be in inverse order of layoff." *See id.* at art. XV, § 2(f). Of the three laid off employees, Plaintiff was the second in line of seniority, but advanced to the first position after the most senior laid off individual was recalled back to work.

---

[1] This introductory section is comprised of Plaintiff's allegations, which the Court accepts as true and construes in the light most favorable to him under Federal Rule of Civil Procedure 12(b)(6).

On or about January 30, 2012, BTU hired two new employees without notifying Plaintiff of the vacancies. BTU did not offer Plaintiff the positions, nor did it tell Plaintiff that he was unqualified for them. Plaintiff requested the Union to write a grievance to protest BTU's failure to recall him to a position filled by one of the two new employees. Although omitted from the First Amended Complaint, Plaintiff alleged in his prior Complaint that "[o]n February l2, 2012, at the request of Plaintiff, a grievance was written by [the Union]." *See* Compl. ¶ 30. The First Amended Complaint is silent as to whether a grievance was written, although it alleges that Plaintiff requested one. It further alleges that the Union "failed or refused to seek arbitration pursuant to the terms of the Collective Bargaining Agreement." *See* First Am. Compl. ¶ 36.

After being passed over for the positions, Plaintiff filed this lawsuit against BTU and the Union, alleging a "hybrid" claim pursuant to section 301 of the National Labor Management Relations Act. Plaintiff alleges that BTU breached its contractual obligations under the collective bargaining agreement and that the Union breached its duty of fair representation. Specifically, Plaintiff claims that BTU breached the agreement when it: "failed or refused to notify him of [the] two vacancies"; "failed or refused to recall him for one of the positions"; "failed or refused to offer him one of the positions"; and "refused to consider a grievance to protest these actions." *See id.* ¶ 40. Plaintiff claims that the Union breached its duty of fair representation when: on January 9, 2012, the Union's president, Denise Megiel-Rollo, "decided Plaintiff would not be offered his job back, and that for her to consider asking would not be a good move"; at an unspecified time, the Union's regional representative, Michael Barnette, "decided that Plaintiff was not going to get his job back"; and at an unspecified time, the Union "failed or refused to timely process a grievance protesting BTU's failure or refusal to recall him to work." *See id.* ¶ 43. Plaintiff also alleges that the Union, through these actions or inactions, "exhibited indifference to the [collective bargaining agreement's] contractual provisions, bad faith, dishonesty of purpose, or such gross mistake or inaction as to imply bad faith." *See id.* ¶¶ 32-33, 41, 44.

BTU has moved to dismiss, arguing that Plaintiff's allegations do not plausibly suggest the Union acted arbitrarily, discriminatorily, or in bad faith – a requirement to state a "hybrid" section 301 claim against the employer and union. BTU also argues that Plaintiff failed to exhaust his internal remedies with the Union prior to bringing suit. Plaintiff, in response, argues that his allegations are sufficient because they show that the Union's president and regional

representative acted arbitrarily and without explanation in ignoring BTU's obligations to recall him under the collective bargaining agreement. He also contends that the exhaustion of internal remedies is an affirmative defense, that the district court has discretion not to require exhaustion, and that exhaustion is not required where it is incapable of providing the grieved worker with meaningful relief.

### Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule of Civil Procedure 8(a)(2), a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted). "This is a stricter standard than the Supreme Court described in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which held that a complaint should not be dismissed for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mukamal v. Bakes*, 378 F. App'x 890, 896 (11th Cir. 2010).

**Legal Analysis**

The Court finds that Plaintiff's allegations do not plausibly suggest the Union breached its duty of fair representation and, as such, dismissal is required. Plaintiff will be permitted leave to amend, however.

In order to prevail on a "hybrid" section 301 claim, the plaintiff must be able to establish both that the employer breached its collective bargaining agreement with the union, as well as that the union breached its duty of fair representation towards him. *See Parker v. Connors Steel Co.*, 855 F.2d 1510, 1519 (11th Cir. 1988); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983). Thus, "the employee must satisfy his burden of proving a breach of contract by the [employer] *and* a breach of the Union's duty of fair representation." *See Parker*, 855 F.2d at 1519 (emphasis original). A union breaches its duty of fair representation only if its actions toward a member are "arbitrary, discriminatory, or in bad faith." *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967). And "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, (1991) (internal citation omitted). Furthermore, "[a] union's broad discretion in prosecuting grievance complaints includes not only the right to settle the dispute short of arbitration but also to refuse to initiate the first steps in the appeal procedure when it believes the grievance to be without merit." *Turner v. Air Transp. Dispatchers' Ass'n*, 468 F.2d 297, 300 (5th Cir. 1972).

While it may be reasonable to infer that BTU breached the terms of the collective bargaining agreement, Plaintiff's allegations do not plausibly suggest that the Union breached its duty of fair representation. Plaintiff alleges that he was not recalled in accordance with the agreement's provisions, but he provides no allegations from which it can be plausibly inferred that the Union acted "so far outside a 'wide range of reasonableness' as to be irrational," or other allegations suggesting bad faith or discriminatory purpose. Indeed, he offers only two allegations in support of his claim that the Union breached its duty of fair representation – neither of which is sufficient.

First, he alleges that Union president, Denise Megiel-Rollo, "wrote to Plaintiff that he would not be offered a job back there and for her to even consider asking would not be a good move on the part of the [Union]." *See* First Am. Compl. ¶¶ 32, 43. Second, Plaintiff alleges that the Union's regional representative, Michael Barnette, "profanely informed" him that he "was

not going to get his job back." *See id.* ¶¶ 33, 43. Importantly, the communication with the Union president allegedly occurred on January 9, 2012 – twenty-one days ***before*** BTU hired the two new employees. Something that happened ***before*** BTU allegedly breached the collective bargaining agreement does not necessarily support a claim that the Union failed to fairly represent Plaintiff *after* the breach. Moreover, Plaintiff has not attached the letter from the Union president or provided any other allegations that plausibly suggest the Union president was acting in bad faith, with discriminatory purpose, or otherwise "so far outside a 'wide range of reasonableness' as to be irrational." *See Air Line Pilots Ass'n*, 499 U.S. at 67. Nor has he provided any allegations that the Union's regional representative's conduct meets that standard. No context is provided at all. Simply put, without more, such barebones allegations are not sufficient to sustain a claim. They do not "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 129 S. Ct. at 1949. Therefore, the First Amended Complaint must be dismissed.

BTU also maintains that the First Amended Complaint should be dismissed because Plaintiff failed to exhaust all internal remedies with the Union prior to filing suit. "An employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act[.]" *Clayton v. Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am.*, 451 U.S. 679, 681 (1981). Beyond this, "courts [generally] have discretion to decide whether to require exhaustion of internal union procedures." *See id.* at 689. The Court takes judicial notice of the docket and what has transpired since briefing on this Motion to Dismiss. As subsequent filings reveal, Plaintiff's grievance was in fact submitted to arbitration. That process having already played out, BTU's exhaustion argument no longer has force.

## Conclusion

For the reasons stated above, BTU's Motion to Dismiss [ECF No. 17] is **GRANTED**. In so ruling, the Court does not suggest that Plaintiff cannot state a "hybrid" claim under section 301, just that he has failed to allege enough facts to plausibly support such a claim. As such, Plaintiff will be given leave to amend in order to set forth allegations that plausibly suggest the Union acted improperly, consistent with the governing legal standards set forth above, to the

extent it is possible for him to do so. The Second Amended Complaint must be filed no later than *June 7, 2013*. If Plaintiff does not file an amended pleading by that date, the Court will enter judgment and close the case.

In light of this posture, the Motion of Summary Judgment [ECF No. 44] filed jointly by BTU and the Union is **DENIED WITHOUT PREJUDICE**, with leave to renew at a later time. Once Plaintiff amends, assuming he does, then BTU and the Union will have the usual period to respond to the amended pleading. If they choose to answer, they may re-file their summary judgment motion in its current form, or supplemented with arguments similar to those raised in this Motion to Dismiss, as soon thereafter as may be warranted. The Court is also willing to entertain reasonable requests to amend the Scheduling Order, to the extent necessary. Because this Order changes the landscape somewhat, the Court **DENIES** without prejudice Plaintiff's current Motion to Extend Deadlines [ECF No. 50]. The request for extensions, and even for a continuance of trial, may be renewed as appropriate in light of this Order.

**DONE and ORDERED** in chambers, at Miami, Florida on May 20, 2013.

_____
**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**